IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL RAHEEM GHULAM RABBANI, *et al.*, | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) Civil Action No. 05-CV-1607 (RMU) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) |
| Respondents. | ) ) |

| | |
|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, *et al.*, | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) Civil Action No. 05-CV-1641 (CKK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) |
| Respondents. | ) ) |

**RESPONDENTS' MOTION TO STAY PROCEEDINGS PENDING
RELATED APPEALS AND MEMORANDUM IN OPPOSITION TO
PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE**

For the reasons explained below, respondents move to stay proceedings in the above-

captioned cases pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos.

04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed,

Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-

CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal,

No. 05-5064 (D.C. Cir. Mar. 10, 2005).  Respondents also hereby oppose petitioners' motions for

order to show cause.[1]  The pending appeals will address the core issues in these cases and, thus,

determine how these cases should proceed, including whether factual returns submitted in

response to orders to show cause should be required, if at all.  It makes no sense for these cases

to proceed prior to resolution of the appeals; further proceedings would require the expenditure

of significant judicial and other resources that may be avoided as a result of the appeals, and, in

any event, such proceedings very likely would have to be revisited or relitigated once the appeals

are decided and the Court of Appeals provides guidance regarding handling of the claims in all of

the Guantanamo detainee cases.

In seeking a stay, however, respondents do not intend thereby to block counsel access to

properly represented petitioners.  To that end, respondents do not object to entry of the protective

order previously entered in other Guantanamo detainee cases, along with appropriate

supplementary orders, to permit such access.[2]  See Amended Protective Order and Procedures for

Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re

Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004) (attached as Exhibit

A); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004

Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C.

Dec. 13, 2004) (attached as Exhibit B); Order Addressing Designation Procedures for "Protected

---

[1]  Because petitioners' motions for order to show cause filed in the above-captioned cases are substantially similar, respondents are filing this consolidated opposition.

[2]  Respondents' lack of objection to entry of these orders, however, is without prejudice to their right to challenge any particular terms of these orders in any future proceedings as appropriate.

Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004) (attached as Exhibit C).

Pursuant to LCvR 7(m), counsel for respondents conferred with counsel for petitioners, who indicated that they oppose the relief as requested herein.[3]

## BACKGROUND

The above-captioned cases are some in the latest round of habeas petitions filed on behalf of aliens detained by the Department of Defense ("DoD") at the United States Naval Base at Guantanamo Bay, Cuba. Within just a few weeks after the Supreme Court's decision in Rasul v. Bush, 542 U.S. 466 (2004), which held that aliens apprehended abroad and detained at Guantanamo as enemy combatants can invoke the habeas jurisdiction of a district court under 28 U.S.C. § 2241, there were pending in this Court thirteen habeas lawsuits on behalf of more than 60 Guantanamo detainees. Given the common issues involved in the Guantanamo detainee cases, the situation led this Court to issue, on or about September 14, 2004, a Resolution of the Executive Session, providing that the Guantanamo detainee cases and any similar cases filed in the future were to be transferred to Senior Judge Joyce Hens Green for coordination and management, with the transferring judges retaining the cases for all other purposes. Under the Resolution, Judge Green was to decide any common procedural and substantive issues with the consent of the transferring judge(s).

Pursuant to her charge, Judge Green established a schedule for the filing by respondents of returns indicating the factual bases for the detention of each petitioner and also scheduled

---

[3] Counsel for petitioners in Rabbani indicated that they would not oppose entry of an order similar to that entered in Al-Subaiy v. Bush, No. 05-CV-1453 (RMU) (dkt. no. 6).

briefing on the legal issues pertaining to the petitions, i.e., on respondents' motion to dismiss or for judgment as a matter of law. Judge Green also entered a protective order applicable to the cases, which included procedures for counsel access to detainees, taking into account the potentially classified nature of much of the information held by or pertaining to the detainees. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004).

On January 19, 2005, Judge Leon granted respondents' motion to dismiss or for judgment in its entirety, concluding that constitutional protections do not extend to aliens outside sovereign United States territory, such as petitioners, and that petitioners also have no viable claims under U.S. statutory law or international law or treaties. See Khalid v. Bush, No. 04-CV-1142 (RJL), Boumediene v. Bush, No. 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005). The Khalid and Boumediene cases are currently on appeal to the D.C. Circuit. See Nos. 05-5062, 05-5063 (D.C. Cir.).

On January 31, 2005, Judge Green entered an order (and memorandum opinion) in eleven other of the pending Guantanamo Bay detainee cases[4] denying in part and granting in part respondents' motion to dismiss or for judgment as a matter of law. See Memorandum Opinion Denying in Part and Granting in Part Respondents' Motion to Dismiss or for Judgment as a

---

[4] Hicks v. Bush, No. 02-CV-0299 (CKK); Al Odah v. United States, No. 02-CV-0828 (CKK); Habib v. Bush, No. 02-CV-1130 (CKK); Kurnaz v. Bush, No. 04-CV-1135 (ESH); O.K. v. Bush, No. 04-CV-1136 (JDB); Begg v. Bush, No. 04-CV-1137 (RMC); El-Banna v. Bush, No. 04-CV-1144 (RWR); Gherebi v. Bush, No. 04-CV-1164 (RBW); Anam v. Bush, No. 04-CV-1194 (HHK); Almurbati v. Bush, No. 04-CV-1227 (RBW); and Abdah v. Bush, No. 04-CV-1254 (HHK).

Matter of Law in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 443 (D.D.C. 2005).  Contrary to the prior decision of Judge Leon, Judge Green, <u>inter alia</u>, determined that procedural "due process" protections apply to aliens detained at Guantanamo Bay and that the Combatant Status Review Tribunal proceedings the military has used to confirm detainees' status as enemy combatants do not satisfy these due process requirements.  <u>Id.</u> at 453-78. Further, in her decision, Judge Green agreed with the decision of Judge Robertson in <u>Hamdan v. Rumsfeld</u>, 344 F. Supp. 2d 152, 165 (D.D.C. 2004), <u>rev'd</u>, 415 F.3d 33 (D.C. Cir. 2005), and concluded that the Third Geneva Convention is "self-executing" and can provide petitioners with a claim in a habeas action.[5]  355 F. Supp. 2d at 478-80.  Judge Green, however, dismissed petitioners' remaining constitutional, statutory, international law, and treaty claims.  <u>Id.</u> at 480-81.

Judge Green noted that her January 31, 2005 decision on respondents' motion to dismiss or for judgment "technically applie[d] only to the eleven cases contained in the [opinion's] caption," but the Court nevertheless acknowledged that the opinion "addresse[d] issues common" to eight other Guantanamo Bay detainee cases that had been filed during or after the briefing and oral argument that resulted in the Court's opinion.[6]  <u>See id.</u> at 452 & n.15.

On February 3, 2005, respondents filed a motion seeking certification of the January 31, 2005 order for interlocutory appeal and filed a motion to stay all the Guantanamo Bay detainee

---

[5]  The D.C. Circuit held in <u>Hamdan</u> that the Third Geneva Convention does not give rise to claims enforceable in court.  <u>See</u> <u>Hamdan</u>, 415 F.3d at 40.

[6]  <u>Belmar v. Bush</u>, No. 04-CV-1897 (RMC); <u>Al-Qosi v. Bush</u>, No. 04-CV-1937 (PLF); <u>Paracha v. Bush</u>, No. 04-CV-2022 (PLF); <u>Al-Marri v. Bush</u>, No. 04-CV-2035 (GK); <u>Zemiri v. Bush</u>, No. 04-CV-2046 (CKK); <u>Deghayes v. Bush</u>, No. 04-CV-2215 (RMC); <u>Mustapha v. Bush</u>, No. 05-CV-22 (JR); <u>Abdullah v. Bush</u>, No. 05-CV-23 (RWR).

cases pending at that time, consistent with the need for these cases to proceed in a coordinated

fashion.  Thus, the motion was filed as a motion for certification of order for interlocutory appeal

and for a stay in the eleven cases in which the January 31, 2005 order was entered, and was filed

by respondents solely as a motion to stay in the other then-pending cases.  Judge Green certified

her January 31, 2005 decision on respondents' motion to dismiss or for judgment for appeal and

stayed proceedings in the eleven cases in which the January 31, 2005 order was entered, "for all

purposes pending resolution of all appeals."  Judge Green left the decision whether to stay cases

other than the eleven to the individual judges in those cases.  See Order Granting in Part and

Denying in Part Respondents' Motion for Certification of Jan. 31, 2005 Orders and for Stay in In

re Guantanamo Detainee Cases (Feb. 3, 2005) (Green, J.).

        Various petitioners in the eleven cases sought reconsideration of Judge Green's stay

order, arguing that the Court should permit factual development and proceedings regarding

detainee living conditions to go forward.  See, e.g., Petrs' Motion for Reconsideration of Order

Granting Stay Pending Appeal at 9-10 (dkt. no. 203 in Al Odah, No. 02-CV-0828 (CKK)).  Judge

Green, however, denied the motion for reconsideration

                in light of the substantial resources that would be expended and the
                significant burdens that would be incurred should this litigation go
                forward, and . . . [in] recognition that a reversal of the Court's
                January 31, 2005 rulings would avoid the expenditure of such
                resources and incurrence of such burdens . . . .

See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re

Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 482 (D.D.C. 2005)

(Green, J.).

On February 9, 2005, pursuant to Judge Green's certification, respondents filed a petition for interlocutory appeal of the January 31, 2005 decision with the D.C. Circuit, see 28 U.S.C. § 1292(b), and requested that the appeal proceed on an expedited basis. Further, petitioners in the eleven cases subject to Judge Green's decision filed a cross-petition for interlocutory appeal with the D.C. Circuit and petitioners in Al-Odah appealed Judge Green's stay order. On March 10, 2005, the D.C. Circuit accepted the interlocutory appeal. In addition, as noted above, petitioners in Khalid and Boumediene appealed Judge Leon's decision. Oral argument in both appeals was held on September 8, 2005.

In light of these pending appeals, several of the cases pending at the time of Judge Green's decision, but that Judge Green did not stay, have been stayed pending appeal. See Paracha, No. 04-CV-2022 (PLF) (dkt. no. 49); Al Marri, No. 04-CV-2035 (GK) (dkt. no. 26); Zemiri, No. 04-CV-2046 (CKK) (dkt. no. 32); Deghayes, No. 04-CV-2215 (RMC) (dkt. no. 7); Mustapha, No. 05-CV-22 (JR) (dkt no. 7); Abdullah, No. 05-CV-23 (RWR) (dkt. no. 16). As Judge Kessler stated in her stay order in Al Marri,

> The opinions resolving Judge Leon's and Judge Green's cases encompass and discuss many of the precise issues raised in Respondents' Motion [to Stay]. Thus, until the Court of Appeals addresses these issues, the law in this Circuit is unsettled, since Judge Green and Judge Leon reached different conclusions about many of the issues before them. Requiring this case to proceed before appellate resolution of those cases therefore would involve an unnecessary expenditure of judicial resources.

Order dated March 8, 2005 in Al-Marri, No. 04-CV-2035 (GK), at 2.

Since February 3, 2005 – the date respondents moved to stay all of the Guantanamo Bay detainee cases pending at that time – over 135 new petitions, involving approximately 220 petitioners, have been filed. Respondents have filed motions to stay proceedings in these new

cases for the reasons stated herein, and several Judges of this Court have stayed proceedings in

the cases pending before them.[7]  The above-captioned cases are part of the latest wave of new

---

[7]  See Al Mohammed v. Bush, No. 05-CV-0247 (HHK) (dkt. no. 18); El-Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK) (dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v. Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no. 12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH) (dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU) (dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v. Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no. 9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v. Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 16); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12); Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 13); Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Al Habashi v. Bush, No. 05-CV-0765 (EGS) (Minute Order dated September 23, 2005); Al Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6); Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-0878 (CKK) (dkt. no. 3); Mohammed v. Bush, No. 05-CV-0879 (RBW) (dkt. no. 4); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No. 05-CV-0881 (RWR) (dkt. no. 5); Bostan v. Bush, No. 05-CV-0883 (RBW) (dkt. no. 4); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v. Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no. 4); Nasrullah v. Bush, No. 05-CV-0891 (RBW) (dkt. no. 4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Sohail v. Bush, No. 05-CV-0993 (RMU) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB) (dkt. no. 4); Al Karim v. Bush, No. 05-CV-0998 (RMU) (dkt. no. 3); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v. Bush, No. 05-CV-1001 (ESH) (dkt. no. 3); Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Hamad v. Bush, No. 05-CV-1009 (JDB) (dkt. no. 4); Khan v. Bush, No. 05-CV-1010 (RJL) (dkt. no. 3); Ali Shah v. Bush, No. 05-CV-1012 (ESH) (dkt. no. 3); Salaam v. Bush, No. 05-CV-1013 (JDB) (dkt. no. 2); Al-Hela v. Bush, No. 05-CV-1048 (RMU) (dkt. no. 12); Zalita v. Bush, No. 05-CV-1220 (RMU) (dkt. no. 3); Abdulzaher v. Bush, No. 05-CV-1236 (RWR) (dkt. no. 12); Aminullah v. Bush, No. 05-CV-1237 (ESH) (dkt. no. 3); Ghalib v. Bush, No. 05-CV-1238 (CKK) (dkt. no. 3); Pirzai v. Bush, No. 05-CV-1242 (RCL) (dkt. no. 4); Peerzai v. Bush, No. 05-CV-1243 (RCL) (dkt. no. 4); Alsawam v. Bush, No. 05-CV-1244 (CKK) (dkt. no. 3); Mohammadi v. Bush, No. 05-CV-1246 (RWR) (dkt. no. 7); Ullah v. Bush, No. 05-CV-1311 (RCL) (dkt. no. 5); Mohammed v. Bush, No. 05-CV-1347 (GK) (dkt. no. 7); Saib v. Bush, No.

petitions.  For the reasons explained below, the proceedings in these cases should be stayed, and

factual returns should not be required, pending resolution of all appeals.

## ARGUMENT

**I.      The Court Should Grant a Stay of the Above-Captioned Guantanamo Bay Detainee Cases Pending Resolution of the Pending Related Appeals.**

In light of the extraordinary issues presented in the above-captioned cases that must be

resolved on appeal, respondents seek a stay of these cases, which present issues, indeed core

claims, that are directly raised in, or will be affected by decisions in, the appeals in In re

Guantanamo Detainee Cases, Khalid, and Boumediene.  The outcome of the appeals will

determine how all of the Guantanamo detainee cases should proceed, if at all.  In light of this

fact, these cases should not go forward prior to obtaining such guidance from the D.C. Circuit

through the resolution of the appeals.[8]

---

05-CV-1353 (RMC) (Minute Order dated August 1, 2005); Hatim v. Bush, No. 05-CV-1429
(RMU) (dkt. no. 16); Al-Subaiy v. Bush, No. 05-CV-1453 (RMU) (dkt. no. 14); Dhiab v. Bush,
No. 05-CV-1457 (GK) (Minute Order dated August 29, 2005); Faizullah v. Bush, No. 05-CV-
1489 (RMU) (dkt. no. 3); Faraj v. Bush, No. 05-CV-1490 (PLF) (dkt. no. 11); Ahmad v. Bush,
No. 05-CV-1492 (RCL) (dkt. no. 3); Amon v. Bush, No. 05-CV-1493 (RBW) (dkt. no. 3);
Kiyemba v. Bush, No. 05-CV-1509 (RMU) (dkt. no. 8); Attash v. Bush, No. 05-CV-1592 (RCL)
(dkt. no. 12); Mamet v. Bush, No. 05-CV-1602 (ESH) (dkt. no. 9); Akhtiar v. Bush, No. 05-CV-
1635 (PLF) (dkt. no. 10); Bin Amir v. Bush, No. 05-CV-1724 (RMU) (dkt. no. 11).

[8]  The Court has the authority to stay proceedings in habeas cases, even prior to the filing
of a response.  Pursuant to the Rules Governing Section 2254 Cases in the United States District
Courts (the "2254 Rules"), which are applicable to petitions for writ of habeas corpus other than
those arising under 28 U.S.C. § 2254, such as the petitions in these cases, see 2254 Rule 1(b), a
court may extend the deadline for responses to habeas petitions beyond the time limits set forth
in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas
petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243.  Rule 4 provides that
"the judge must order the respondent to file an answer, motion, or other response within a fixed
time, or to take other action the judge may order. . . ."  See also Bleitner v. Welborn, 15 F.3d
652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States
District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened

The petitions in these cases raise legal issues that were squarely addressed by the opinions in In re Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised in the appeals, including: (1) whether the petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners violate their Fifth Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva Convention;[9] and (3) whether the petitioners have stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the Administrative Procedures Act, the Alien Tort Statute, and customary international law. It makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns in response to orders to show cause regarding the issuance of a writ of habeas corpus, to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals will determine

---

up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules "prevails" over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail"). Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules. See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to tailor the proceedings" in habeas cases). See also Landis v. North American Co., 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

[9] See footnote 5, supra.

the legal analyses applicable to these cases and, indeed, whether and how these cases should

proceed.[10]

Also, as Judge Green recognized, further proceedings consistent with her January 31,

2005 rulings, including, in the view of petitioners in those cases, extensive discovery and factual

development, promise to impose "significant burdens" that may be avoided, depending on the

outcome of the appeals.  See Order Denying Motion for Reconsideration of Order Granting Stay

---

[10]  Petitioners' allegation that, "on information and belief," the health and mental
condition of petitioners will be placed at risk if their detention continues without court
intervention, is based merely on nonspecific newspaper articles, allegations of abuse by *other*
detainees, and documents released by the government reporting perceived mistreatment in some
isolated instances, which are being investigated so that corrective action can be taken where
appropriate.  See Rabbani Mot. ¶¶ 12-13; Al-Badah Mot. ¶¶ 10-11.  None of these sources
provides any evidentiary support that the petitioners in the above-captioned cases are suffering
abuse or mistreatment, particularly considering respondents' sworn testimony that the mission of
the detention facility at Guantanamo Bay involves humane detention of the detainees, and
consistent with that mission, and with the President's directive to the military to treat detainees
humanely, mistreatment or abuse of detainees is not permitted.  See Declaration of Col. John A.
Hadjis ¶ 2 (Exhibit A to Respondents' Memorandum of Points and Authorities in Opposition to
Petitioner's Application for Preliminary Injunction in O.K. v. Bush, No. 04-CV-1136 (JDB) (dkt.
no. 115)); see also Memorandum for the Vice President, the Secretary of State, the Secretary of
Defense, et al., from President George W. Bush Re: Humane Treatment of al Qaeda and Taliban
Detainees ¶ 2 (Feb. 7, 2002) (available at
http://www.library.law.pace.edu/research/020207_bushmemo.pdf).  Further, Guantanamo has
carefully established procedures in place for responding appropriately to any hunger strikes by
detainees that include protocols to intervene to take medically appropriate measures to preserve
detainees' lives and health.  See generally Declaration of Major General Jay W. Hood (Exhibit A
to Respondents' Opposition to Petitioners' Motions to Compel Access to Counsel and
Information Related to Medical Treatment in Al-Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt.
no. 54)).  In any event, petitioners' unspecified and speculative allegations of abuse and
mistreatment do not warrant the production of factual returns in these cases, or otherwise counsel
against the entry of a stay of proceedings, which the Court presumably would retain discretion to
modify should circumstances arise truly warranting a lifting of the stay.  See, e.g., Abdullah v.
Bush, No. 05-CV-23 (RWR), Order (Mar. 16, 2005) (dkt. no. 16) ("The proceedings in this case
are stayed pending resolution of the appeals pending before the United States Court of Appeals
for the District of Columbia, in In re Guantanamo Detainee Cases and Boumediene v. Bush et al.,
except that petitioners may seek emergency relief from this court in appropriate circumstances . .
. .").

Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482. And as Judge

Kessler concluded, "the law in this Circuit is [currently] unsettled," given the contrary decisions

of Judges Green and Leon. Al Marri, No. 04-CV-2035 (GK) (dkt. no. 26). Requiring this case to

proceed before resolution of the appeals "would involve an unnecessary expenditure of judicial

resources." Id. Indeed, any proceedings that are permitted to go forward very likely would have

to be revisited or relitigated once the appeals are decided and the Court of Appeals provides

guidance regarding handling of the claims in the Guantanamo detainee cases.

    For these reasons, these cases should be stayed pending guidance from the D.C. Circuit,

through the various appeals, regarding the issues in these cases, including whether and how to

proceed.

## II.     Respondents Should Not Be Required to Submit Factual Returns During the Pendency of the Stay.

    Although respondents do not object to entry of the protective order and related,

supplementary orders previously entered in other Guantanamo detainee cases to enable counsel

to meet and correspond with properly represented petitioners in a privileged manner at

Guantanamo Bay on appropriate matters related to these cases, it makes no sense for the

government to process and submit factual returns[11] with respect to petitioners when the D.C.

Circuit will be considering the proper scope of these habeas proceedings, including whether the

claims can be dismissed without reference to specific factual returns. See Khalid, 355 F. Supp.

---

    [11] A factual return for a petitioner in a Guantanamo detainee case typically has consisted
of the record of proceedings before the Combatant Status Review Tribunal that confirmed
petitioner's status as an enemy combatant properly subject to detention. The factual return is
separate from briefing on legal issues in the cases. Factual returns include both classified and
unclassified material.

2d 311 (dismissing petitioners' claims in their entirety). Even if counsel had access to factual

returns, they would not be able to share classified information in the returns with petitioners. <u>See</u>

Amended Protective Order and Procedures for Counsel Access to Detainees at the United States

Naval Base in Guantanamo Bay, Cuba in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et</u>

<u>al.</u> (D.D.C. Nov. 8, 2004), ¶ 30. Thus, there is no reason why counsel need access to factual

returns at this time.[12]

   Moreover, the submission of factual returns which, in any event, may ultimately be

unnecessary, burdens the government's resources and risks the inadvertent disclosure of

classified information. Each factual return must be obtained from the Department of Defense,

and then reviewed by agencies who provided source information to DoD to ensure that

information disclosed to counsel in the returns is in accordance with all applicable statutes,

regulations and Executive Orders. Respondents must then prepare both public and classified

versions of the factual returns for submission to the Court and counsel. Each return can range

from dozens to hundreds of pages, depending upon the circumstances. Thus, respondents face an

immense logistical burden to process and file the returns, especially on the short, simultaneous

schedules being requested by petitioners in the various cases. Further, submission of these

returns vastly expands access to classified information contained in the returns, thereby

increasing the risks of inadvertent or other disclosure or compromise of the information. These

burdens and risks, however, could be rendered completely unnecessary, depending on the

---

  [12] In this vein, various Judges of this Court have declined to require factual returns during
the pendency of the stay. <u>See</u>, <u>e.g.</u>, <u>Sliti v. Bush</u>, No. 05-CV-0429 (RJL) (dkt. no. 5); <u>Imran v.
Bush</u>, No. 05-CV-0764 (CKK) (dkt. no. 6); <u>Attash v. Bush</u>, No. 05-CV-1592 (RCL) (dkt. no.
12).

outcome of the appeals.  Cf. Order Denying Motion for Reconsideration of Order Granting Stay

Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to

avoid expenditure of "substantial resources" and imposition of "significant burdens" that might

not be necessary depending on outcome of appeal).

      Although certain Judges of this Court have ordered respondents to submit factual returns

in cases that are otherwise stayed, respondents oppose the submission of factual returns in the

above-captioned cases for the reasons stated herein.  If submission of factual returns were to go

forward at all, it could only be done pursuant to a coordinated and reasonable schedule, taking

account of the fact that petitioners in all the recently filed cases are seeking factual returns and

recognizing the logistical burdens posed by an undertaking to produce returns in the cases.

Given these circumstances, a schedule for the rolling production of factual returns in these case

(and potentially other cases) over the next 10 to 12 weeks would be appropriate.  In a number of

other recent cases, the government has been given between 90 and 120 days to file factual

returns, and respondents request that the Court impose a similar schedule, if the Court decides to

require factual returns.  See e.g., Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26) (imposing 90-day

schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-

Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-

CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt.

no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing

120-day schedule).

## CONCLUSION

For these reasons, the Court should stay further proceedings in these cases, except as noted above, pending resolution of the appeals of Judge Leon's decision in <u>Khalid</u> and <u>Boumediene</u> and Judge Green's January 31, 2005 decision in <u>In re Guantanamo Detainee Cases</u>. Petitioners' motions for order to show cause should be denied.  A proposed order is attached.


Dated: October 7, 2005                        Respectfully submitted,

                                              PETER D. KEISLER
                                              Assistant Attorney General

                                              KENNETH L. WAINSTEIN
                                              United States Attorney

                                              DOUGLAS N. LETTER
                                              Terrorism Litigation Counsel

                                                 /s/ Preeya M. Noronha
                                              JOSEPH H. HUNT (D.C. Bar No. 431134)
                                              VINCENT M. GARVEY (D.C. Bar No. 127191)
                                              TERRY M. HENRY
                                              JAMES J. SCHWARTZ
                                              PREEYA M. NORONHA
                                              ROBERT J. KATERBERG
                                              NICHOLAS J. PATTERSON
                                              ANDREW I. WARDEN
                                              EDWARD H. WHITE
                                              Attorneys
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              20 Massachusetts Ave., N.W.  Room 7144
                                              Washington, DC  20530
                                              Tel:  (202) 514-4107
                                              Fax:  (202) 616-8470

                                              Attorneys for Respondents