IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, et al., | ) ) ) |
| Petitioners, | ) Docket No. 1:05CV 01641 (CKK) |
| v. | ) ) |
| GEORGE W. BUSH, et al., | ) ) |
| Respondents. | ) October 18, 2005 |

**PETITIONERS' MOTION FOR AN ORDER REQUIRING 30-DAYS ADVANCE NOTICE OF ANY INTENDED REMOVAL OF DETAINED PETITIONERS FROM GUANTANAMO AND/OR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners Abdulaziz Abdulrahman Al-Badah, Abdulaziz Mohammed Al-Naser and Ibrahim Mohammed Al-Naser (the "Detained Petitioners"), together with Next of Friend Abdullah Abdulazia Al-Badah, move for an Order requiring Respondents to provide counsel for Petitioners and the Court with advance notice of any intended removal of the Detained Petitioners from the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo") and/or an injunction precluding their removal from Guantánamo absent resolution of the Petition before the Court or the Detained Petitioners unconditional release from any custody or control of the United States or other foreign sovereign.

As set forth more fully in the accompanying Statement of Points and Authorities, upon information and belief, Respondents have contemplated or are contemplating removal of some or all of the Detained Petitioners from Guantánamo to foreign territories. The transfer of the Detained Petitioners to a country that creates a foreseeable and direct risk that they will be

ORAL ARGUMENT REQUESTED

subject to torture constitutes a violation of Detained Petitioners' rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.  In addition to increasing peril for the Detained Petitioners, such rendition could deprive the Court of its jurisdiction.

WHEREFORE, the Detained Petitioners and their Next of Friend respectfully request the advance notice of 30 days to enable their counsel to contest any such removal from Guantánamo and preserve the jurisdiction of the Court in this matter or, alternatively an injunction precluding the Detained Petitioners removal from Guantánamo absent resolution of the Petition before the Court or the Detained Petitioners unconditional release from any custody or control of the United States or other foreign sovereign.

RESPECTFULLY SUBMITTED,
THE PETITIONERS,


By_____
   Arnold L. Natali, Jr.  (NJ4811)
   LEAD COUNSEL
   McCarter & English, LLP
   Four Gateway Center
   100 Mulberry Street
   Newark, New Jersey 07102
   (973) 622-4444
   (973) 624-7070 Fax

   Jason C. Welch  (CT23418)
   McCarter & English, LLP
   CityPlace I
   36th Floor
   Hartford, CT  06103
   (860) 275-6700
   (860) 724-3397 Fax

*Of Counsel*
Barbara Olshansky (NY0057)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
(212) 614-6439
(212) 614-6499 Fax

IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, et al., ) | |
| ) | |
| Petitioners, ) | Docket No. 1:05CV 01641 (CKK) |
| v. ) | |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | October 18, 2005 |

**PETITIONERS' STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR AN ORDER REQUIRING 30-DAYS
ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONERS
FROM GUANTANAMO AND/OR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the All Writs Act, 28 U.S.C. § 1651, and Local Civil Rule 7(a), Petitioners Abdulaziz Abdulrahman Al-Badah, Abdulaziz Mohammed Al-Naser and Ibrahim Mohammed Al-Naser (the "Detained Petitioners"), together with Next of Friend Abdullah Abdulazia Al-Badah, submit this Statement of Points and Authorities in support of their Motion for Order Requiring 30-Days Advance Notice of Any Intended Removal of the Detained Petitioners from Guantanamo and/or Preliminary Injunction.

**STATEMENT OF FACTS**

The Detained Petitioners are three Saudi citizens who are purportedly being detained as "enemy combatants" at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). As detailed in the habeas petition they filed dated August 15, 2005 ("Petition"), all deny being "enemy combatants" and contend that they are being detained in violation of the Constitution, treaties and laws of the United States.

ORAL ARGUMENT REQUESTED

Although the Detained Petitioners in the instant case have been detained at Guantánamo for more than three years, they have reason to fear they will be transferred to countries where they will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice known as "rendition," "irregular rendition" or "extraordinary rendition," is a program devised to facilitate interrogation of terrorism suspects by extraditing the subjects from one foreign state to another where aggressive methods of interrogation that are illegal in America, including torture, are performed.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times*, the *New Yorker* and the British Broadcasting Corporation, the Untied States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. *See* Rajiv Chandrasekaran and Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, *Wash. Post*, Mar. 11, 2002 at A1 (Exhibit A); *see also* Dana Priest and Barton Gellman, *U.S. Debries Abuse But Defends Interrogations*, *Wash. Post*, Dec. 26, 2002 at A1 (Exhibit B); *see also* Megan K. Stack and Bob Drogin, *Detainee Says U.S. Handed Him Over for Torture*, L.A. Times, Jan. 13, 2005 at A1 (Exhibit C); *see also* Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005. For example, according to the *Washington Post*:

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation.

2

Rajiv Chandrasekaran and Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, *Wash. Post*, Mar. 11, 2002, at A1.  Consequently, as a result of the September 11th attacks, President Bush declared a global war on terrorism and a program that was originally supposed to be carried out on a limited basis, according to a former C.I.A. official, has become "an abomination."  Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005 at ¶ 7.  Moreover, in a recent article in the *New Yorker*, the rendition process is described as a program that was originally supposed to be "aimed at a small discrete set of suspects," however, it has come to "include a wide and ill-defined population that the Administration terms 'illegal enemy combatants.'"  *Id.*

There is little dispute that the countries to which detainees may be brought are known to practice torture.  *See e.g.*, Megan K. Stack and Bob Drogin, *Detainee Says U.S. Handed Him Over for Torture*, L.A. Times, Jan. 13, 2005 at A1 (stating that "News accounts, congressional testimony and independent investigations suggest the [CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").  In fact, in a report released on February 28, 2005, regarding renditions to Egypt, the State Department found that "there were numerous, credible reports that [Egyptian] security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent." Dept't of State, *County Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c) (Exhibit D).  For example, a Guantánamo detainee, Mamdouh Habib, recounts his rendition to Egypt by the United States *before* being moved to Cuba states:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod."  And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained

3

> dogs. . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that hew was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Clearly, Petitioners in the instant case have reason to fear that they will be transferred into the custody of a foreign country for continued illegal detention and/or torture without due process of the law.

## ARGUMENT

The Respondents should be prohibited from transferring the Detained Petitioners from Guantánamo, short of their release, or at the very least the Respondents should be ordered to provide the Petitioners and their counsel 30 days notice of any transfer from Guantánamo. In addition to the physical harm in which rendition may place the Detained Petitioners, rendition could deprive the Court of its jurisdiction. Thus, it is imperative that while the Detained Petitioners are being deprived liberty that they remain at all times in a location where the Court can continue to exercise its jurisdiction. Presently the Respondents are denying the counsel for the Petitioners access to the Detained Petitioners. They should not be allowed to deprive even further the Detained Petitioners of the fundamental right to counsel by depriving the Court jurisdiction.

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 (D.C. Cir. 1973). Furthermore, Petitioners' request meets the most fundamental purpose of preliminary injunctive relief, that is

4

"to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

In order to demonstrate entitlement to a preliminary injunction, the petitioner must show "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *See also Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998);

In the present matter, Petitioners are likely to succeed on the merits of their claims. Specifically, Petitioners have properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). In *Rasul*, the Supreme Court held that under 28 U.S.C. § 2241 district courts have jurisdiction to consider habeas applications including those petitions made by "aliens in a territory over which the United States exercises plenary and exclusive jurisdiction, but not 'ultimate sovereignty.' *Rasul*, 124 S. Ct. at 2688 (citations omitted). In particular, the Court found that the "express terms of [the United States'] agreements with Cuba, the United States exercise 'complete jurisdiction and control' over Guantánamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses." *Rasul*, 124 S. Ct. at 2696 (citations omitted). Consequently, because the United States exercises complete control over Guantánamo, section 2241 grants the District Court jurisdiction to entertain Petitioners' habeas corpus challenges to the legality of their detention at Guantánamo. *See Rasul*, 124 S. Ct. at 2698.

Furthermore, Judge Green has already ruled that Petitioners have stated actionable claims under the Due Process Clause and the Geneva Conventions. Therefore, if the United States were

5

to "render" Petitioners to countries that afforded no due process protections, would be to flout Judge Green's ruling and defeat this Court's Jurisdiction. Additionally, such a transfer would also violate basic international legal norms embodied in the Geneva Conventions, International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treating and Punishment.

In the present matter, Petitioners stand to suffer immeasurable and irreparable harm if the injunction is not granted. Specifically, if Respondents are permitted to "render" Petitioners' to a foreign county, Petitioners stand to be tortured or even possibly put to death, at the hands of a foreign government and the Court would be powerless to intervene even if it was so inclined. Upon information and belief, the Detained Petitioners have been threatened with "rendition" or transfer to countries that routinely practice torture like Egypt or Jordon. Moreover, a transfer to another country, even if "only" for continued imprisonment, also circumvents the Detained Petitioners' right to adjudicate the legality of their detention in this Court and their right to counsel. In light of the aforementioned, granting a preliminary injunction in the present matter would certainly prevent the Detained Petitioners from suffering irreparable harm.

In the present matter, granting the injunction would not injure the Respondents. Respondents have held Petitioners for more than three years and are in absolute control of their destiny. Petitioners merely ask that if Respondents intend to remove Petitioners from Guantánamo, Cuba that they provide counsel and this Court with adequate notice of any such removal. Consequently, Respondents can suffer no conceivable harm from complying with such a request.

Lastly, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioners from the Court's jurisdiction. Regardless of

6

the Executive Branch's certainty that its actions are legal and of Petitioners status as "enemy combatants," sound public policy dictates that a federal litigant, properly before the Court and represented by counsel, be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely without due process of the law. Furthermore, the public good is certainly against the notion that the United States would "render" a prisoner to a country that is known to torture prisoners, to circumvent its own laws against such policy.

In sum, because Petitioners are likely to succeed on the merits of their claims; Petitioners stand to suffer immeasurable and irreparable harm if the injunction is not granted; Respondents would not be injured if the injunction is granted; and public policy clearly favors requiring Respondents to provide advance notice to counsel, this court should grant a preliminary injunction requiring Respondents to provide counsel for Petitioners and the Court with 30-days advance notice of any intended removal of petitioners from Guantánamo.

RESPECTFULLY SUBMITTED,
THE PETITIONERS,


By_____
  Arnold L. Natali, Jr.
  McCarter & English, LLP
  Four Gateway Center
  100 Mulberry Street
  Newark, New Jersey 07102
  Tel: (973)622-4444
  Fax: (973) 624-7070

  Jason C. Welch  (CT23418)
  McCarter & English, LLP
  CityPlace I
  36th Floor
  Hartford, CT  06103
  (860) 275-6700
  (860) 724-3397 Fax

        *Of Counsel*
        Barbara Olshansky (NY0057)
        Center for Constitutional Rights
        666 Broadway, 7th Floor
        New York, NY 10012
        (212) 614-6439
        (212) 614-6499 Fax