IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, *et al.*, | ) ) ) ) | |
| *Petitioners*, | ) ) ) | |
| v. | ) ) | No. 05-1641 (CKK) |
| GEORGE W. BUSH, *et al.*, | ) ) ) | |
| *Respondents*. | ) | |

**PETITIONER AL-NASER'S MEMORANDUM OF LAW IN
OPPOSITION TO RESPONDENTS' MOTION TO EXAMINE
PRIVILEGED COMMUNICATIONS AND MOTION FOR OTHER RELIEF**

Petitioner Abdulaziz Mohammed Al-Naser ("Petitioner," "Petitioner Al-Naser" or "Mr. Al-Naser") submits this memorandum in opposition to the Respondents' request to have this Court authorize its seizure of privileged attorney-client communications without notice to or approval from the court by creating a so-called "Filter Team." In addition to opposing respondents' application, Petitioner Al-Naser requests the Court to modify the stay previously entered on October 19, 2005 herein and (a) to order the respondents to return immediately all legal mail or privileged communication from counsel to Mr. Al-Naser seized or impounded by Respondents at Guantanamo and (b) to order respondents to provide, under oath, an accounting by a person with actual knowledge listing every person to whom was shown or discussed any legal materials or other privileged matter of Mr. Al-Naser. This request arises in the following background.

<u>The Attorney Client Relation</u>. This Court entered the Protective Order on October 19, 2005. Under its provisions Arnold L. Natali, Jr., Esq., and Jeremy L. Hirsh, Esq., met with petitioner on a visit to Guantanamo in late December 2005, and Jeremy L. Hirsh, Esq., has met with petitioner on two subsequent visits to Guantanamo. Messrs. Natali and Hirsh have

been directed by Petitioner to pursue his action in this Court on his behalf. *See* Declaration of Jeremy L. Hirsh attached hereto as Exhibit A. To facilitate and implement that representation, Messrs. Natali and Hirsh have discussed with the Petitioner the events leading to his seizure and imprisonment at Guantanamo as well as other places while en route, have sent Petitioner numerous letters based on such communications concerning his legal status, including his right to participate in ARB proceedings, the application of various cases and legal authorities involving Guantanamo to his situation, his particular petition and claims as well as other topics. In short, the legal mail sent to petitioner was core attorney-client correspondence and advice.

<u>The Compelled Disclosure of the Privileged Material</u>. The fact of the seizure of privileged material is undisputed. As Respondents state, on or about June 14, 2006, the Naval Criminal Investigative Service investigated all materials in all detainees' cells, and impounded detainees written materials, "including any legal material." Respondents' Brief at 14. The government does not indicate when, if ever, such materials may be returned. Nor did the government's counsel seek permission to seize such privileged matter. Petitioner has no information about what has happened to these communications, who has read them, to whom they have been shown, or any other detail of what use respondents have made of these confidential communications.

## ARGUMENT

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." 8 Wigmore, Evidence §2290 (McNaughton rev. 1961). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and

ME1\5743794.2

that such advice or advocacy depends upon the lawyer being fully informed by the client." *Upjohn v. United States,* 449 U.S. 383, 389 (1981). The privilege applies in civil and criminal settings. *See Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998). Because of the importance of these materials the compelled disclosure of such material is uniformly regulated by courts as in *Upjohn and Swidler & Berlin.* Absent such court regulation, of course, the privilege would be effectively eliminated, as it has been here, by zealous officials believing their special writs justify short-circuiting and evasion of the privilege.

Petitioner does not challenge the right of the government to inspect folders or containers of legal materials for contraband. Such inspection should take no more than a few moments, however.[1] Accordingly, the holding of such materials where they can be or have been read by others than the attorney or client who wrote them, is a crass, wholesale violation of the attorney-client privilege which this court cannot sanction, particularly after the fact. The obvious purpose of the seizure is the breach of the privilege through reading of the materials. We do not expect the government to contend otherwise: it is conducting an investigation after all.

Indeed, the "shoot first and ask questions later" tactic cannot be permitted to stand. A hallmark of the conduct of the "war on terror" in general, and treatment of Guantanamo prisoners in particular, has been the repeated assertion by the Executive Branch and the military of an exclusive power to make final determinations on critical legal issues to the exclusion of other branches of the government independently charged with a constitutional duty to review such determinations.[2] First, the designation of "enemy combatant" was said to be exempt from

---

[1] The protective order entered in this case also contemplates a brief review by the privilege team of legal mail before delivery to a prisoner. No other review or reading is authorized by the protective order. Thus, the rifling of the content of legal mail is not excused by the protective order and cannot be justified in reference to it.

[2] The United States Supreme Court deemed it necessary to state that the President is precluded, notwithstanding the existence of the "war on terror," from disregarding the limitations on the President's power
(continued...)

ME1\5743794.2

judicial review on grounds that only the executive possessed the wisdom and "expertise" to make such vital decisions. The Supreme Court rejected this view in *Rasul* and held that habeas petitions such as this one were appropriate. *Rasul v. Bush*, 542 U.S. 466 (2004). Likewise, the Executive Branch claimed the right, denied it by Congress and the Law of War, to establish special tribunals, to try alleged war crimes and pressed upon the Supreme Court the view that the Court could not even consider the question of the extraordinary executive power asserted. In *Hamdan v. Rumsfeld*, 548 U.S._____ (No. 05-184)(2006) this view was systematically dismantled by a 5-3 decision holding that Congress had not authorized such tribunals and their institution violated Common Article 3 of the Geneva Conventions as well.

Likewise here, the mode of operation is familiar: first violate the law, in this case the privilege, then direct your lawyers to file some palliative motion trying to explain that the seizure is lawful.

In addition to violating the privilege without any authority under law or even argument first to the court, respondents' wholesale invasion of the privilege on or about June 14, 2006 has taken place, in the case of Mr. Al-Naser in particular, without any justification or reasonable basis. Mr. Al-Naser has been housed in Camp 3, at some distance from the Camp in which the deceased detainees had been housed. In addition, respondents offer no basis for suspecting that Mr. Al-Naser, as compared to any other of the approximately 450 detainees at Guantanamo, would be inclined to participate in a scheme to take his own life or to instruct others in so doing. Mr. Al-Naser is in solitary confinement in Camp 3 and cannot effectively

---

(continued...)

established by Congress. *See Hamden v. Rumsfeld*, 548 U.S. ____, footnote 23 (2006). Such limitations include the Uniform Code of Military Justice which, the Court explained, incorporates Common Article 3. Id.

communicate with other detainees. Respondents' violation of the privilege with respect to every detainee, and with respect to Mr. Al-Naser in particular, without justification cannot be sanctioned.

By once again resorting to self-help respondents would reverse the normal role of litigants and the court. It is time, we submit, to treat such disdain for the judicial process with swift and effective resolution.

Remedy. Here the seizure of privileged materials and the assertion of continuing dominion over them is clear. What is not clear is the prejudice to petitioner that has resulted. To determine that, and thus to be able to formulate curative measures or sanctions, more information is needed. The order submitted herewith directs respondents to provide information, under oath by a person with actual knowledge, giving the particulars of what has been done with the privileged materials (who has read them, what analysis has been made, etc...) so that counsel and the court can assess the need for further measures.

Dated:    July 20, 2006

Respectfully submitted,

*Arnold Natali*
Arnold L. Natali, Jr. (NJ4811)
McCarter & English LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: 973.622.4444
Fax: 973.624-7070

*Of Counsel*

Barbara J. Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: 212.614.6439
Fax: 212.614.6499
Counsel for Petitioners

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, et al.,<br><br>*Petitioners*,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>*Respondents*. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 05-1641 (CKK)<br>)<br>)<br>) |

## DECLARATION OF JEREMY L. HIRSH

1. My name is Jeremy L. Hirsh. I am associated with the law firm of McCarter & English, LLP ("M&E"), and I am one of the attorneys from M&E who represent Abdulaziz Mohammed Al-Naser in this case. I make this declaration on personal knowledge.

2. In the course of representing Mr. Al-Naser I have written every letter and heard every communication made to him, by myself or by Mr. Natali, have been present throughout every meeting of counsel with Mr. Al-Naser at Guantanamo, and have heard every word uttered by him at such meetings. I am fluent in Arabic and have met with Mr. Al-Naser without an interpreter. At these meetings Mr. Al-Naser arrives with questions and topics which he wishes to discuss with us. He maintains a "legal materials" folder in which he stores our letters to him and other records of our attorney-client communications.

3. I have read the declarations of Harry B. Harris, Jr. (undated) and of Carol Kisthardt dated July 7, 2006 both filed on July 7, 2006.

4. At no time have Mr. Natali or I ever communicated to Mr. Al-Naser any advice, legal or otherwise, concerning the taking of his life or his participation in a hunger strike, or the tying of knots.

ME1\5743796.1

5. At no time has Mr. Al-Naser sought advice, legal or otherwise, concerning his taking of his own life, his participation in any hunger strike, or the tying of knots.

6. No legal mail or paper given to Mr. Al-Naser was endorsed in blank under a caption "Privileged and Confidential," "Attorney Client Privileged," "Attorney-Detainee Materials" or their equivalent. The only papers so designated have been actual communications of legal advice or requests for information. Each such communication was made in accordance with the procedures set out in the Protective Order entered in this case on March 16, 2005.

7. Neither Mr. Natali nor I have delivered to or taken from Mr. Al-Naser messages or communication from any other prisoner at Guantanamo.

I declare under the penalties of perjury the foregoing is true and correct.

Executed on July 20, 2006

                                                        Jeremy L. Hirsh

ME1\5743796.1

## CERTIFICATE OF SERVICE

I, Arnold L. Natali, hereby certify that on this 20th day of June, 2006, pursuant to the procedures set forth in the Amended Protective Order of November 8, 2004, I provided copies of Petitioner Al-Naser's Memorandum of Law in Opposition to Respondents' Motion to Examine Privileged Communications and Motion for Other Relief, the Declaration of Jeremy L. Hirsh, Esq., and a proposed Order to the Court Security Officer for the Court Security Officer to serve on Respondents' counsel on June 21, 2006.

*Arnold Natali*
Arnold L. Natali, Jr. (NJ4811)
LEAD COUNSEL
McCarter & English, LLP
Four Gateway Center
100 Mulberry St
Newark, New jersey 07102
(973) 622-4444
(973) 624-7070 Fax

ME1\5751407.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULAZIZ ABDULRAHMAN AL-BADAH, et al., <br><br> Petitioners, <br> v. <br><br> GEORGE W. BUSH, President of the United States, et al., <br><br> Respondents. | Docket No. 1:05CV01641 (CKK) |

### (PROPOSED) ORDER

This matter having coming before the Court by Respondents' July 7, 2006 motion for procedures related to review of certain detainee materials and request for expedited briefing and the Court having considered the opposition papers of Petitioner Abdulaziz Mohammed Al-Naser and arguments of counsel, it is hereby

ORDERED that Respondents' motion is DENIED; and it is

FURTHER ORDERED that Respondents shall return forthwith all legal mail and privileged communication from counsel to Mr. Al-Naser seized or impounded by them at Guantanamo; and it is

FURTHER ORDERED that within 5 days of the date of this Order, Respondents provide a written statement under oath, by a person with actual knowledge, giving the full particulars of what has been done with any such privileged communication or legal mail (*e.g.*, who has read them and what analysis has been made of them).

Dated:_____         _____
                                           United States District Judge

MEI\5751181.2